LEONARD, CROSSETT & RILEY, Inc., v. WHALEY.

No. 6218.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1930.

J. H. Peterson, O. R. Baum, and D. Worth Clark, all of Pocatello, Idaho, for appellant.

J. W. Porter and J. W. Taylor, both of Twin Falls, Idaho, and Harold L. Yeamans, of Buhl, Idaho, for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

A judgment, after verdict of a jury, was entered against the appellant, defendant below, for the sum of $3,924.70. The sum stated represented a balance of the price of a lot of potatoes, which appellee alleged in his complaint had been purchased from him by appellant. By the complaint it was alleged that in March, 1928, plaintiff and defendant entered into an agreement for the sale by the plaintiff to defendant of 1,750 bags of No. 1 potatoes at the agreed price of $2.15 per 100 pounds, and 700 bags of No. 2 potatoes at the agreed price of $1.40 per 100 pounds; the same to be delivered by the plaintiff to defendant on board cars to be furnished by the defendant, such delivery to be within a reasonable time after the date of sale, and purchase price to be paid at the time of delivery.

It was alleged that two carloads of potatoes were delivered and paid for; that the vendee refused to request further delivery of potatoes or to furnish cars upon which to load the same, and refused to make a further payment on account of the agreed purchase price. Allegation was made that, during the time that the vendor waited for the request from the vendee for further deliveries to be made, the market price of potatoes dropped and that the potatoes rotted and became useless.

The defendant appellant answered the complaint.

Paragraph 1 of that answer was as follows: "Denies each and every allegation in said amended complaint contained, except those herein specifically admitted."

Paragraph 2 of the answer followed: "Answering Paragraph V in said amended complaint contained, the defendant herein admits that it paid the plaintiff for two cars of potatoes during the month of March, 1928."

The last and remaining statement in the answer was that the plaintiff had neglected and refused to use reasonable care and diligence in mitigating and minimizing the damages, in that he neglected seasonably to sell the potatoes on the open market.

▇▇ Whaley, appellee, testified at the trial that the transactions concerned with the sale of his potatoes were all had with a man named Ben R. Walters; that he first sold a carload of potatoes in February, 1928, to Walters, and that Walters paid him the purchase price with his (Walters') personal check; that later he "sold Walters" his entire crop of potatoes in the quantities, grades, and at the prices as alleged in his complaint; that he delivered two carloads to Walters, and was paid by Walters for the potatoes so delivered. He stated that Walters gave him a "Crossett & Riley" check drawn on the First National Bank of Pocatello; that this check was signed, "Leonard, Crossett & Riley, per Ben Walters." He testified further that, after the two cars were delivered, Walters instructed him not to deliver any more cars until further orders, and that after that he tried to call Walters at the latter's office and residence and could not reach him; that about two weeks later he saw Walters, who said to him, "We have bought your spuds and will take them if they are only worth 15c"; that thereafter he saw no more of Walters and was unable to locate him; and that he did not, at the time of the trial, know where he was. Another witness testified that he saw the check and that it "appeared to be drawn by Ben Walters on Leonard, Crossett & Riley."

Plaintiff introduced a copy of a newspaper containing an advertisement which appeared to be that of appellant, which set forth appellant's name, and contained the words, "Apples and potatoes—new office—Ben Walters at Boise-Payette Lumber Co.—We would like to buy your spuds." No showing was made as to who had authorized the advertisement to be printed. Testimony was received to the effect that Walters told Whaley that he was buying for appellant; also that he made the same statement to a witness named Thompson. Whaley testified further that he knew that Walters had bought a lot of potatoes from other persons in and about Buhl, and that Walters was there generally reputed to be the agent of Leonard, Crossett & Riley.

The testimony as to the contents of the check delivered in payment for the two carloads of potatoes, the testimony regarding the newspaper advertisement, the testimony regarding statements alleged to have been made by Walters that he was buying potatoes for appellant, that Walters was reputed to be appellant's agent, was all objected to, and to the ruling of the court admitting the same exceptions were preserved; a motion to strike was later made and denied.

Appellant offered no evidence at the trial,

but asked for an instructed verdict. The court denied this motion, and submitted the case to the jury upon instructions, as the record recites. The instructions were not included in the bill of exceptions.

Appellee admits that the agency of Walters could not be shown by the declarations of the alleged agent. He admits that, unless there was a prima facie showing made by competent evidence, exclusive of the declarations of the alleged agent, his case falls. In this connection it is argued by appellee's counsel that, after a prima facie showing of agency had been made, the declarations of the agent made to appellee or other persons, as well as the other testimony which was objected to, would be competent as corroborative proof. It will be remembered that appellant offered no evidence in opposition to that presented by appellee. Assuming a prima facie case to have been made out, appellee would have been entitled to an instruction to the jury to find in his favor, and the admission, if erroneous, of the declarations of the alleged agent, and the other testimony objected to, would not change the result here. The matter as to whether a prima facie case was established must be decided by reference to the admissions made in the answer of the appellant, which involves also the evidence respecting the payment by appellant of the purchase price of the two cars of potatoes which are admitted to have been delivered.

■ Considering the objection made to the testimony respecting the contents of the check which appellee received in payment for the potatoes delivered: That objection was that the check itself (or draft, if so it was), which the appellee testified had gone out of his hands when he cashed it, was not produced, and that oral proof of its contents in the state of the record was not competent. Of course, under the admission of appellant that it had "paid the plaintiff for two cars of potatoes during the month of March, 1928," appellee was entitled to identify the payment with the two cars which he delivered and to show by oral testimony the form of payment, as by check, and also that Walters delivered him the check. But the showing made as to the contents of the check was that the signature of appellant on the check was followed by the words "per Ben Walters." The latter indorsement would give added significance to the check, as showing authority of Walters to write it in the name of appellant, and hence furnish material evidence of agency. At the time objection was made to the oral proof of this writing, the appellee's attorney inquired of appellant's counsel whether the "checks or drafts" were in court, and the reply was that they were not. In ruling on the objection, the judge presiding said, "Well, he has requested the production of it and you say you haven't got it, so I think he would be entitled to introduce secondary evidence." Counsel replied, "We are entitled to three days' notice to produce it." Provisions of Compiled Statutes of Idaho, 1919, as pertinent, are:

"§ 7970. There can be no evidence of the contents of a writing other than the writing itself, except in the following cases * * * 2. When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice."

"§ 7962. If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents * * * may be proved as in case of its loss. * * * *"

■ We are of the opinion that the court erred in admitting parol proof of the contents of the check, and that the error was prejudicial to appellant. Looking now to the question as to whether appellant, by its answer to the complaint of appellee, wherein it admitted that it had paid for two cars of potatoes during the month of March, 1928, by implication admitted also that such payment was made upon the contract as pleaded in the complaint: If this contention were maintained, it would result that the contract as sued upon in its substantial effect would be taken as confessed upon the pleadings. Clearly, such a conclusion is not warranted. The appellant's denial was as to each and every allegation contained in the amended complaint except "those hereinafter specifically admitted." Nothing was admitted in paragraph 2 of the answer except that during the month of March, 1928, appellant had paid the plaintiff for two cars of potatoes.

■ Without waiving its denial of the allegations in the amended complaint, appellant was entitled to plead, as it did in paragraph 3 of its answer, the alleged failure of the appellee to use reasonable diligence in disposing of the potatoes in order to minimize the damages. The fairness of this rule may be well illustrated in cases of claimed ostensible agency.

A new trial must be had because of the insufficiency of the evidence to sustain the judgment, and also because of the rulings of the court in admitting the testimony objected to by appellant.

The judgment is reversed.